## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| **TALENT TREE, INC.,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Case No. 4:07-cv-03735** |
| | § | |
| **DONNA MADLOCK,** | § | |
| | § | |
| **Defendant.** | § | |

### MEMORANDUM AND ORDER

On April 2, 2008, the Court entered an Order finding that it may exercise personal jurisdiction over Defendant and that venue is proper in the Southern District of Texas. As a result, the Court denied in part Defendant's Motion to Dismiss. The Court asked parties for additional briefing to assist in the determination of whether it should exercise its discretionary jurisdiction over Plaintiff's declaratory judgment action. After considering the briefing and the relevant law, the Court has determined that the exercise of Declaratory Judgment Act jurisdiction over Plaintiff's claims is appropriate. Defendant's Motion to Dismiss, Doc. No. 6, is therefore **DENIED**.

Also pending before the Court is Plaintiff's Motion for Summary Judgment, Docket No. Docket No. 11. The Court will set a short hearing on the question of discovery and Defendant's request for a continuance of the Motion for Summary Judgment, and parties will be notified as to the date and time of that hearing by separate order.

## I.    BACKGROUND

This case involves a dispute between Donna Madlock and her employer, Talent Tree, Inc. (Talent Tree), over the payment of bonus compensation under the "Variable Compensation for Regional Vice Presidents." Ms. Madlock claims that she is owed bonus compensation based on the

1

Hestair Account at a Mercedes-Benz Plant located in Tuscaloosa, Alabama. Ms. Madlock also argues that Brenda Harris made fraudulent representations to her regarding her eligibility for bonus payments under the RVP plan when offering her the job of Regional Vice President and that Talent Tree and Ms. Harris fraudulently suppressed the factual basis on which her bonuses were being calculated. Talent Tree contends that the bonus compensation plan is not a contract and that Ms. Madlock was never owed bonus payments for the Hestair Account. Talent Tree seeks a declaratory judgment that there is no contractual relationship between Talent Tree and Ms. Madlock and, as a result, Talent Tree is not obliged to pay additional bonus money to Ms. Madlock.

In its April 2, 2008 Order, the Court discussed at length the factual circumstances surrounding this case, and the Court incorporates that discussion in full. In supplemental briefing, Talent Tree provides additional factual information. Specifically, Talent Tree asserts that it has twenty-nine incentive compensation plans, that 194 Talent Tree employees are eligible to participate in these plans, and those employees reside in nineteen different states. Of those 194 employees, seven are Regional Vice Presidents (RVPs), as Ms. Madlock was, and those seven RVPs are located in five different states. Defendant Madlock asserts in supplemental briefing the additional allegation that, on information and belief, Ms. Harris promised Ms. Madlock incentive compensation based on the Mercedes-Benz and Hestair accounts during a meeting that took place in Alabama.

## II.    ANALYSIS

The Court finds that the exercise of discretionary jurisdiction over Plaintiff's declaratory judgment action in this case is appropriate.

A district court "possesses discretion in determining whether and when to entertain an action under the Declaratory Judgment Act, even when the suit otherwise satisfies subject matter

jurisdictional prerequisites."[1] *Wilton v. Seven Falls Co.*, 515 U.S. 277, 282 (1995).  When considering whether to dismiss a declaratory judgment action, the Court must determine: "(1) whether the declaratory action is justiciable; (2) whether the court has the authority to grant declaratory relief; and (3) whether to exercise its discretion to decide or dismiss the action." *Sherwin-Williams Co. v. Holmes County*, 343 F.3d 383, 387 (5th Cir. 2003).  The first two factors do not appear to be in dispute in this case.  The Court must therefore determine whether to exercise its discretion to decide or dismiss the action.

The Court decides whether to exercise its discretion to decide or dismiss the suit by weighing seven nonexclusive factors set forth in *St. Paul Ins. Co. v. Trejo*, 39 F.3d 585 (5th Cir. 1994).[2]  These factors are:

> (1) whether there is a pending state action in which all of the matters in controversy may be fully litigated;
> (2) whether the plaintiff filed suit in anticipation of a lawsuit filed by the defendant;
> (3) whether the plaintiff engaged in forum shopping in bringing the suit;
> (4) whether possible inequities in allowing the declaratory plaintiff to gain precedence in time or to change forums exist;
> (5) whether the federal court is a convenient forum for the parties and witnesses;
> (6) whether retaining the lawsuit would serve the purposes of judicial economy; and
> (7) whether the federal court is being called on to construe a state judicial decree involving the same parties and entered by the court before whom the parallel state suit between the same parties is pending.

*Sherwin-Williams*, 343 F.3d at 388 (citing *Trejo*, 39 F.3d at 590-91). The Court will briefly address these factors in turn.

*Pending State Action*.  Defendant Madlock filed a lawsuit in Alabama state court on March 31, 2008 asserting the same basic facts and claims that are at issue in this case.  The Court notes,

---

[1] The Court has diversity jurisdiction over this suit pursuant to 28 U.S.C. § 1332.

[2] In *Sherwin-Williams*, the Fifth Circuit noted that the *Trejo* factors address the same three categories of issues that other circuits use to determine whether a court should accept or decline jurisdiction in a declaratory judgment action. 343 F.3d at 391. Those factors are: 1) the proper allocation of decision-making between state and federal courts; 2) fairness, including considerations of forum shopping and anticipatory filing; and 3) efficiency and the need to avoid duplicative or piecemeal litigation. *Id.*

however, that Defendant filed her lawsuit five months after Plaintiff filed this declaratory judgment action and only after the Court asked Defendant if she had, in fact, filed a case in state court. Plaintiff also recently informed the Court that, as of May 20, 2008, Ms. Madlock has not served any of the defendants named in the Alabama lawsuit. (Doc. No. 24.) Furthermore, after considering the party's briefing on choice of law, the Court finds that it is quite likely that Texas law will apply to the claims at issue in the lawsuit.[3]  Thus, although this Court is concerned about the "proper allocation of decision-making between state and federal courts," this factor does not militate strongly in favor of dismissal, even though there is usually a presumption that a state court should decide a case "if the federal declaratory judgment action raises only issues of state law and a state case involving the same state law issues is pending." *Sherwin-Williams*, 343 F.3d at 390, 391-92.

*Anticipatory Filing, Forum Shopping, and Possible Inequities:*  Ms. Madlock argues that Talent Tree filed suit in anticipation of her own state lawsuit and engaged in improper forum selection. The Fifth Circuit has clarified that "[m]erely filing a declaratory judgment action in a federal court with jurisdiction to hear it, in anticipation of state court litigation, is not in itself improper anticipatory litigation or otherwise abusive 'forum shopping.'" *Sherwin-Williams*, 343

---

[3] In reaching this conclusion, the Court considered the choice-of-law rules of Texas. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941) (requiring the Court to apply the choice-of-law rules of the state in which the action was filed). The parties have not briefed the Court on Alabama choice-of-law rules, and the Court, of course, cannot say with certainty whether the Alabama state court would reach the same conclusion. Alabama, like Texas, appears to follow the Second Restatement's "most significant relationship" test to determine choice of law over a contract claim if the contract does not include a choice of law provision. *See Unisource Worldwide, Inc. v. South Central Alabama Supply, LLC*, 199 F.Supp.2d 1194, 1201-02 (M.D. Ala. 2001) (citing *Cherry, Bekaert & Holland v. Brown*, 582 So.2d 502, 507 (Ala. 1991); *Minnesota Min. and Mfg. Co. v. Nishika Ltd.*, 953 S.W.2d 733, 735 (Tex. 1997). The Court finds that Texas law would likely apply under this analysis, even though Texas also generally applies the law of the state where a personal services contract is performed. *See DeSantis v. Wackenhut Corp.*, 793 S.W. 2d 670, 679 (Tex. 1990). So far, there are no tort claims at issue in this case. Ms. Madlock asserts tort claims in her state lawsuit that, so far, have not been brought in to the case pending before this Court. It is not at all clear that Alabama state law would apply to Ms. Madlock's claims in either suit. Alabama adheres to the First Restatement *lex loci delicti* rule, while Texas follows the Second Restatement's "most significant relationship" test. *Compare Fitts v. Minnesota Min. & Mfg. Co.*, 581 So.2d 819, 823 (Ala. 1991), *with Torrington Co. v. Stutzman*, 46 S.W. 3d 829, 848 (Tex. 2000). The alleged financial, mental, and emotional "injury" Ms. Madlock suffered from the alleged fraud does not appear to have occurred in Alabama, and thus even under the First Restatement's place of injury approach, it is unlikely that Alabama law would apply to Plaintiff's claims of fraud.

F.3d at 391-92 (noting additionally that "[d]eclaratory judgments are often 'anticipatory,' appropriately filed when there is an actual controversy that has resulted in or created a likelihood of litigation"). Ms. Madlock argues that Defendant seeks to avoid application of Alabama state law favorable to Ms. Madlock, but as the Court has already noted, it is not likely that Alabama law would even apply to the claims in this lawsuit, even if it were litigated in Alabama state court. Ms. Madlock also argues that Talent Tree wishes to avoid suit in Alabama because, in 1997, an Alabama jury awarded a sizeable verdict against Ms. Harris and the former Talent Tree entity in an lawsuit involving a different bonus compensation dispute. Although some courts have considered a declaratory judgment Plaintiff's attempt to avoid large jury verdicts in state court as relevant to the analysis of forum shopping, this factor is not necessarily fatal if a Plaintiff also has a legitimate purpose for seeking a declaratory judgment in the federal forum. *Id.* at 399. Furthermore, it seems just as likely that Ms. Madlock prefers to litigate in Alabama state court for exactly the same reason. Talent Tree contends that it would be more efficient to resolve the question of whether the bonus compensation plan constitutes a contract in one forum rather than potentially litigating the issue in different forums of other RVP's choice. *See Id.* at 400 ("[E]fficiencies may result from litigating issues pertinent to multiple potential claims against a defendant in one federal forum, as opposed to a number of state courts."). Nor does it appear that Talent Tree has filed this lawsuit to secure delay; to the contrary, Talent Tree's actions in this lawsuit indicate that they are quite eager to see a speedy resolution of the underlying claims. The Court believes that Talent Tree has a legitimate purpose in seeking a declaratory judgment in this case, and does not find that Ms. Madlock has presented substantial evidence of improper forum shopping. Finally, Ms. Madlock has not pointed to other inequities that result from allowing Talent Tree to litigate in this Court. Although Talent Tree may have filed this suit in federal court shortly after Ms. Madlock sent the company a demand

letter, Ms. Madlock waited nearly six months after sending that letter to file her suit in Alabama. On balance, the Court does not find that Talent Tree engaged in unfair forum shopping nor that other equitable considerations dictate dismissal of this suit.

*Convenience of Forum and Judicial Economy.* Talent Tree argues that its principal place of business is in Houston, and there are numerous witnesses and relevant documents located in Houston. Although Alabama may be somewhat more convenient for Ms. Madlock than Texas, Ms. Madlock has not demonstrated that Alabama is a significantly more convenient forum for the parties and witnesses. *See* Memorandum and Order, Apr. 8, 2008, Doc. No. 17 at 12 (discussing convenience factors); *see also Sherwin-Williams*, 343 F.3d at 400 ("The fact that it would not be as convenient for all the declaratory judgment defendants to litigate in federal district court as it would be for them to litigate in the nearest state courthouse does not mean that it is unduly burdensome for them to do so."). As the Court noted in its prior order, Ms. Madlock lives and works in Georgia, not Alabama. Ms. Madlock has not argued that other essential parties may not be joined in the federal suit.[4]

After considering all of the factors set forth in *Trejo*, the Court finds that the exercise of jurisdiction under the Declaratory Judgment Act is appropriate in this case. The Court does not believe that "the questions in controversy between the parties to the federal suit, and which are not foreclosed under the applicable substantive law, can better be settled in the proceeding pending in the state court." *Brillhart v. Excess Ins. Co. of America*, 316 U.S. 491, 492 (1942).

## III.   MOTION FOR SUMMARY JUDGMENT

Defendant has argued that Plaintiff's pending Motion for Summary Judgment is premature, given that no discovery has been conducted in this case. Defendant requests a continuance, and the

---

[4] As to the seventh *Trejo* factor, there is no allegation that this Court is being called on to construe a state judicial decree involving the same parties and entered by the court before whom the parallel state suit between the same parties is pending.

Court stated in its Order of April 8, 2008 that it was inclined to grant that request.  *See* FED. R. CIV. P. 56(f); *International Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1267 (5th Cir. 1991) (noting that a "continuance of a motion for summary judgment for purposes of discovery should be granted almost as a matter of course").  The Court did ask the parties to identify any issues that might be resolved on summary judgment without discovery.  Plaintiff contends that the question of whether the RVP bonus compensation plan constitutes a contract could be resolved on summary judgment without discovery.  Although Defendant did not directly respond to the Court's question, Ms. Madlock did argue in her earlier response to Plaintiff's Motion for Summary Judgment that discovery might, in fact, be needed for a proper resolution of the pending contract claims.  Given the posture of this case, the Court believes that a short hearing on the matter of the continuance and what discovery is needed would be appropriate.  Parties will be notified as to the time and date of that hearing by separate order.[5]

## IV.    CONCLUSION

Because the Court finds that the exercise of jurisdiction under the Declaratory Judgment Act is appropriate, Defendant's Motion to Dismiss, Doc. No. 6, is **DENIED**.  The Court will set a short hearing on the question of discovery and Defendant's request for a continuance of the Motion for Summary Judgment, and parties will be notified as to the date and time of that hearing by separate order.

**IT IS SO ORDERED**.

**SIGNED** this 23rd day of May, 2008.

KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE

---

[5] Parties will be allowed to participate in this hearing by telephone.